# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

JANICE WILLIAMS,

        Plaintiff,

v.                                                      Case No:  2:16-cv-822-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

## OPINION AND ORDER

Plaintiff Janice Williams seeks judicial review of the denial of her claim for supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the briefs and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.[1]

## I.      Issues on Appeal[2]

Plaintiff raises three issues on appeal: (1) whether the Administrative Law Judge ("ALJ") fully and fairly developed the record; (2) whether the ALJ properly considered Plaintiff's failure to follow prescribed treatment in evaluating her

---

[1] Both parties have consented to the jurisdiction of the United States Magistrate Judge.   Docs. 22, 23.

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived.   *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

credibility; and (3) whether substantial evidence supports the ALJ's assessment of Plaintiff's residual functional capacity ("RFC").

## II.    Summary of the ALJ's Decision

On April 9, 2012, Plaintiff filed an application for SSI, alleging her disability began August 15, 2008 due to uncontrolled diabetes, anemia and severe nerve pain.[3] Tr. 81, 181.   On April 20, 2015, ALJ Gregory M. Hamel issued a decision finding Plaintiff not disabled since April 9, 2012, the application date.   Tr. 15-22.   At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 9, 2012, the application date.   Tr. 17.   Although the ALJ found that Plaintiff has severe impairments of diabetes mellitus and cervical disc disease with radiculopathy, he concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 17-18.   The ALJ then determined that Plaintiff has the RFC to perform light work[4] with certain

---

[3] Plaintiff previously filed applications for a period of disability and disability insurance benefits ("DIB") and SSI, which were denied.   Tr. 66.   Plaintiff appealed the denial to ALJ Denise Pasvantis, who issued a decision finding Plaintiff not disabled from August 15, 2008 to July 29, 2010.   Tr. 66-75.   This decision is not before the Court.   *See generally* the record.   On September 9, 2011, Plaintiff filed another set of applications for DIB and SSI, which also were denied.   Tr. 30, 153-61.   These applications are not at issue here.   Tr. 15, 30-31.

[4] The regulations define light work as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.   If someone can do light work, [it is

limitations.  Tr. 18.  Next, the ALJ found that Plaintiff is capable of performing her past relevant work as a housekeeper.  Tr. 22.  Thus, the ALJ found Plaintiff not disabled since April 9, 2012, the application date.  *Id.*

### III.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).[5]  Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial

---

determined] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

[5] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments.  *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c and 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016).  The Court will apply rules and regulations in effect at the time of the ALJ's decision.  *Hargress v. Soc. Sec. Admin., Comm'r*, 874 F.3d 1284, 1290 (11th Cir. 2017); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citation omitted). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV. Discussion

### a. Whether the ALJ fully and fairly developed the record

The ALJ noted in his decision, "[Plaintiff] is a 55-year-old former housekeeping worker who completed high school but may have had special education services while in school." Tr. 17. On her application for SSI, Plaintiff did not allege any intellectual disability as her disabling impairment. Tr. 81. Plaintiff also denied attending special education classes on her disability report. Tr. 182.

In contrast, Plaintiff's counsel submitted a Pre-Hearing Memorandum before the ALJ's hearing, suggesting Plaintiff has "altered mental status," "labile personality," communication problems, "mild mental slowing" and illiteracy. Tr. 229-30. Counsel noted that Plaintiff's "untreated" mental impairments contributed

to her difficulties complying with her treatment plans.   Tr. 230.   Counsel did not allege Plaintiff's possible mental impairments as disabling.   Tr. 229-30.

During the hearing before the ALJ, Plaintiff testified that although she finished high school, she was in special education classes throughout school.   Tr. 20, 33.   Plaintiff further testified she cannot read or understand a newspaper, is unable to write a check and has not ever written one.   Tr. 39.   She also testified she did not pass the driver's license test.   *Id.*   Based on Plaintiff's testimony, her counsel indicated to the ALJ that her high school diploma "is probably more like a special education diploma."   Tr. 30.   Plaintiff's counsel requested a consultative psychological examination of Plaintiff, arguing that she is illiterate and has only limited education.   Tr. 58-59.   Counsel admitted Plaintiff's limited ability to read is not indicated anywhere in the record, and his request was solely based on Plaintiff's testimony during the hearing.   Tr. 59.   The ALJ responded Plaintiff finished high school, and he would consider counsel's request.   Tr. 59-60.

In his decision, the ALJ noted Plaintiff alleged diabetes, hip pain and intellectual difficulties and also "is often non-compliant with her prescribed medication regimen and dietary recommendations" regarding her diabetes.   Tr. 19. The ALJ found Plaintiff's alleged intellectual disability did not contribute to her non-compliance with prescribed medications because:

> [Plaintiff] alleged that she has problems reading and making change, and although she did reportedly receive special education services in school, she ultimately earned a high school diploma. [Plaintiff's] representative made a suggestion in his brief (Exhibit B14E) that [Plaintiff's] alleged intellectual deficit contributes to her noncompliance with treatment recommendations, citing to Exhibit B13F, yet treatment

notes in this exhibit state that [Plaintiff] is following a low-fat diet and has been successful with weight management. Furthermore, [Plaintiff] consistently verbalizes understanding of spoken and written instructions during these visits and nothing in this exhibit suggests that [Plaintiff's] noncompliance with medication is related to any confirmed intellectual deficit. . . .

Though treatment staff have commented that [Plaintiff] seems "distant" and slow to answer questions, her boyfriend stated to Steven Mitnick, ARNP, in October of 2011 that "she is always like this," suggesting that this is just [Plaintiff's] baseline personality (Exhibit B5F, Page 41). Regardless, [Plaintiff's] alleged mental incapacity to follow prescribed treatment is not supported by her demonstrated ability to maintain employment as a housekeeper for several years (Exhibit B6D).

Tr. 20-21. The ALJ did not include any mental limitations in Plaintiff's RFC. Tr. 18.

Plaintiff argues the ALJ erred by not ordering a consultative psychological examination, although substantial evidence supports the presence of Plaintiff's intellectual disability. Doc. 20 at 6-8. The Commissioner responds Plaintiff does not show that a consultative examination and intelligence testing were necessary, or that the absence of them prejudiced her claims. Doc. 21 at 5-11.

It is well established that the ALJ has a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Graham v. Apfel,* 129 F.3d 1420, 1422-23 (11th Cir. 1997) (the ALJ has an affirmative duty to develop the record fully and fairly). The Supreme Court has held that "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). Accordingly, if the ALJ has insufficient medical evidence regarding a claimant's impairments to determine whether she is disabled,

the ALJ may order a mental examination at the government's expense. 20 C.F.R. §

404.1517. The ALJ is not required to order a consultative examination if the ALJ

has sufficient information to make a determination. *Wilson v. Apfel*, 179 F.3d 1276,

1278 (11th Cir. 1999); *Fries v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 830-31

(11th Cir. 2006) ("the ALJ is not required to order an examination if such an

examination is not necessary in order to enable the ALJ to make a disability

determination.").

In determining whether the ALJ properly developed the record, the Court is

"guided by whether the record reveals evidentiary gaps which result in unfairness or

'clear prejudice.'" *Graham*, 129 F.3d at 1423 (citing *Brown v. Shalala*, 44 F.3d 931,

934-35 (11th Cir. 1995)). If the record was sufficient for the ALJ to evaluate

Plaintiff's impairments and functional abilities and does not show the kind of gaps in

the evidence necessary to demonstrate prejudice, there is no error and the

Commissioner's decision must stand. *See id.* Instead, the claimant must make "a

showing of prejudice before [the court] will find that the claimant's right to due

process has been violated to such a degree that the case must be remanded to the

[ALJ] for further development of the record." *Brown*, 44 F.3d at 935. "[The]

claimant cannot show prejudice by speculating that she would have benefitted from

a more comprehensive hearing." *McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596,

599 (11th Cir. 2016) (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)).

Prejudice is shown when "the ALJ did not have all the relevant evidence before him

or did not consider the evidence in reaching his decision." *Id.* (citing *Kelley*, 761 F.2d at 1540).

Here, the Court finds a consultative psychological examination and intelligence testing were not necessary for the ALJ to make an informed decision. It is Plaintiff's burden to prove that she has a disabling impairment and produce evidence in support of her claim. *Ellison*, 355 F.3d at 1276. Plaintiff here clearly did not meet her burden because, as Plaintiff's counsel admitted during the hearing, the record does not establish the presence of any intellectual disability. Tr. 59. Instead of producing evidence as required, Plaintiff's counsel asked the ALJ to order a consultative examination based on Plaintiff's testimony alone, which the ALJ did not find credible. Tr. 20-21, 59; *cf. Ellison*, 355 F.3d at 1276.

The Court also finds Plaintiff does not establish prejudice sufficient to merit remand. *See Brown*, 44 F.3d at 935. As admitted by her counsel during the hearing and in the brief, the evidence Plaintiff supplies in support of her claim does not firmly establish the presence of her intellectual disability, let alone reveal the effect of the disability on her ability to work. Tr. 21, 59; Doc. 20 at 7-8. Rather, Plaintiff speculates a consultative examination would show that "an intellectual disability is likely present." Doc. 20 at 8. As noted, Plaintiff "cannot show prejudice by speculating that she would have benefitted from a more comprehensive hearing." *McCabe*, 661 F. App'x at 599 (citing *Kelley*, 761 F.2d at 1540); *see Joint v. Colvin*, No. 8:14-CV-3192-T-TGW, 2016 WL 7406693, at *5 (M.D. Fla. Mar. 2016) (holding the ALJ was not required to order an updated consultative examination or additional

intelligence testing because "the plaintiff seeks [them] in the hope that [they] would be more favorable to her claim than the current evidence of record").

Even if a consultative psychological examination establishes the presence of an intellectual disability, "the mere existence of [the] impairment[] does not reveal the extent to which [it] limit[s] her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). Thus, the absence of a consultative psychological examination does not show "the kind of gaps in the evidence necessary to demonstrate prejudice." *Graham*, 129 F.3d at 1423. Accordingly, the Court finds the ALJ properly developed the record and did not order a consultative psychological examination and intelligence testing. *See id.*; *Brown*, 44 F.3d at 934-35.

> ### b. *Whether the ALJ properly considered Plaintiff's failure to follow prescribed treatment in evaluating her credibility*

The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely credible "in light of several factors." Tr. 19. As one of the several factors, the ALJ discussed at length Plaintiff's non-compliance with her prescribed medications and dietary recommendations:

> The record indicates that [Plaintiff] is supposed to be injecting Lantus once per day and Humalog *before* meals, three times per day (Exhibit 15F, Page 18). Despite [Plaintiff's] lengthy history of non-compliance with her medications, leading to repeated hospitalizations for diabetic ketoacidosis, she does not show signs of end-organ damage due to her uncontrolled diabetes. . . .

> When [Plaintiff] has been hospitalized, though she claims medication compliance, she is able to be quickly stabilized with proper levels of medication. Emergency department notes from [Plaintiff's] second visit to the hospital in March of 2014 state that [Plaintiff] has a history of

difficulty regulating her blood sugars and does not follow any specific diet. It is noted that [Plaintiff] stated that she took her insulin after dinner, but the recommendation is that she take Humalog *before* meals (Exhibit B14F, Page 16). Going back to September of 2010, emergency department notes indicate that [Plaintiff] admitted that she took insulin, but then did not eat anything. She quickly improved with administration of oral glucose and intake of food (Exhibit 1F, Page 1). Her diagnosis was "Iatrogenic hypoglycemia secondary to insulin dosing and no eating." These notes indicate that although [Plaintiff] may report compliance with her diabetic medication, she is not complying with the dietary recommendations necessary to keep her blood sugar under control. Her rapid improvement with minimal intervention is indicative of [Plaintiff's] diabetes being controllable if she would just fully comply with dietary and treatment recommendations (Exhibit B1F, Page 22 and 41 & Exhibit B11F, Page 9 and 35).

In addition to her noncompliance with her diabetic medications, the record indicates that [Plaintiff] is also non-compliant with her thyroid and lipid lowering medications (Exhibit B15F, Page 4). Though [Plaintiff] stated that her lipid lowering medications are cost-prohibitive, it is indicative of a pattern of overall non-compliance with recommended treatment. With regard to [Plaintiff's] thyroid dysfunction, the record indicates that [Plaintiff] is non-compliant "some of the time," but her only reported symptom of thyroid dysfunction is "dry skin." . . .

Tr. 19-20.   Based on this discussion and other evidence, the ALJ found, "[n]o single factor mentioned is conclusive on the issue to be determined, but when viewed in combination, and in conjunction with the medical history and examination findings, they suggest that [Plaintiff] is not as limited as is alleged."   Tr. 21.

Plaintiff does not challenge the ALJ's finding that she did not follow the prescribed medications and dietary recommendations.   Doc. 20 at 9-12.   Instead, Plaintiff argues the ALJ erred by considering her failure to follow the prescribed treatment in assessing her credibility.   *Id.* at 10-11.   Plaintiff also asserts the ALJ should have inquired whether Plaintiff had a reasonable explanation for not following

her prescribed treatment, such as the effect of her "likely" mental impairment. *Id.* at 11-12. The Commissioner responds the ALJ properly discounted Plaintiff's credibility, and substantial evidence supports his credibility findings. Doc. 21 at 11-15.

The Court finds the ALJ properly considered Plaintiff's noncompliance with her prescribed treatment in assessing her credibility. Tr. 19-20. Plaintiff relies on legal authority supporting that a claimant must follow the prescribed treatment, if this treatment is expected to restore her ability to work. Doc. 20 at 9-10; *see* 20 C.F.R. § 416.930(a). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (internal quotation marks and citation omitted). Thus, the claimant is found not disabled, if the claimant does not "follow the prescribed treatment without a good reason." 20 C.F.R. § 416.930(b). This precedent, however, does not apply when the ALJ's denial of benefits, as here, was not significantly based on a finding of noncompliance. *Ellison*, 355 F.3d at 1275.

Rather, the ALJ here appropriately considered Plaintiff's noncompliance with the prescribed treatment in discounting her credibility. SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) ("[T]he individual's statements may be less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."); 20 C.F.R. § 416.920(c)(3). Furthermore, the ALJ properly examined whether Plaintiff had good reasons for her noncompliance, such as Plaintiff's intellectual disability and inability

to afford treatment, and found that there were none. Tr. 20-21; *see* SSR 96-7p, 1996 WL 374186, at \*7 (July 2, 1996); *Jasper v. Colvin*, No. 8:16-cv-727-T-23AEP, 2017 WL 655528, at \*5-\*6 (M.D. Fla. Jan. 31, 2017).

The Eleventh Circuit long has recognized that "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d R 1225 (internal citations omitted). "The question is not . . . whether the ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). "A clearly articulated credibility finding with supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

Here, based on the requirements of 20 C.F.R. § 404.1529, the ALJ considered Plaintiff's symptoms and the extent to which the symptoms reasonably can be accepted as consistent with the objective medical and other evidence. Tr. 18-21. After his careful consideration of Plaintiff's medical evidence, the ALJ articulated explicit and adequate reasons for discounting Plaintiff's credibility. Tr. 19-21. Based on the findings above, substantial evidence supports the ALJ's credibility determination.

### c. Whether substantial evidence supports the ALJ's assessment of Plaintiff's RFC

The ALJ found Plaintiff has the RFC to perform light work "except [she] is unable to work in hazardous environments, such as near unprotected heights or dangerous machinery. In addition, she should never be required to climb a ladder, rope or scaffold and should only occasionally be required to climb a ramp or stairs, stoop, kneel and crawl."  Tr. 18.  Plaintiff argues the ALJ erred by not considering Plaintiff's mental impairments in assessing her RFC.  Doc. 20 at 13.  She further asserts the ALJ's RFC assessment did not account for her lapses in concentration, unscheduled breaks and work absences.  *Id.* at 13-14.  The Commissioner responds the ALJ properly assessed Plaintiff's RFC.  Doc. 21 at 15-17.

As noted, although it is Plaintiff's burden to prove that she has a disabling impairment and produce evidence in support of her claim, the record here does not establish Plaintiff's intellectual disability.  *Ellison*, 355 F.3d at 1276; Tr. 20-21, 59. Even if her medical record establishes the presence of her mental impairments, as discussed, "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."  *Moore*, 405 F.3d at 1213 n.6.  Similarly, Plaintiff provides her treatment history only in support of her additional limitations, which is not sufficient to disturb the ALJ's RFC findings.  Doc. 20 at 13-14; *see id.*; *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of a 'deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work.").

RFC assessments and the application of vocational factors are exclusively reserved to the Commissioner. SSR 96-6p, 1996 WL 374180 (July 2, 1996); 20 C.F.R. § 404.1527(d)(2). The Eleventh Circuit has held that "[a] claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012). Here, the ALJ properly considered the entire record in assessing Plaintiff's RFC. Tr. 18-21; *see* 20 C.F.R. § 404.1545(a). Accordingly, the Court finds substantial evidence supports the ALJ's RFC determination.

V. **Conclusion**

Upon review of the record, the Court concludes that the ALJ applied the proper legal standards, and hos determination that Plaintiff was not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.  The decision of the Commissioner is **AFFIRMED**.

2.  The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 5th day of January, 2018.


CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record